UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  6:24-CR-00175-01** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **CHRISTOPHER DUGAS JR (01)** | **MAGISTRATE JUDGE DAVID J. AYO** |

### MEMORANDUM RULING AND ORDER

Presently before the Court is the Defendant's Motion to Dismiss Count One of the Indictment [ECF No. 24]. Count One of the Indictment charges Defendant with a violation of 18 U.S.C. § 922(g)(1), namely being a felon in possession of a firearm. Defendant argues that this statute is unconstitutional as applied to him.

### BACKGROUND

On August 21, 2024, a federal grand jury in Lafayette returned a two-count indictment charging the defendant with possession of a firearm by a convicted felon and possession of a firearm in furtherance of a drug trafficking crime based on his arrest in Church Point, Louisiana on March 16, 2023.[1] At the time of the Defendant's arrest and federal indictment, he had the following felony convictions:

> (1) On August 31, 2017, the Defendant was convicted of distribution of marijuana under Docket No. 84941 in the Fifteenth Judicial District Court, sentenced to 5 years at hard labor, suspended with 2 years' probation; on August 27, 2018, probation revoked; on May 25, 2021, parole revoked;[2]

---

[1] ECF No. 1.
[2] ECF No. 26, Exhibit 1.

1

(2) On November 6, 2019, the Defendant was convicted of aggravated flight from an officer under Docket No. 87531 in the 15th Judicial District Court., sentenced to 1 year at hard labor, suspended with 1 year probation; on May 25, 2021, parole revoked;[3] and

(3) On November 13, 2018, the Defendant was convicted of possession of Schedule II controlled substances1, under Docket No. 88925 in the 15th Judicial District Court, sentenced to 4 years at hard labor; on May 25, 2021, parole revoked.[4]

Defendant has not asserted that he was not previously convicted of these crimes, or that they were not punishable by more than one year in prison.

## LAW AND DISCUSSION

Defendant's Motion asserts that § 922(g)(1) violates the Second Amendment as applied to him in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*.[5] Defendant also points the Court to the recent Fifth Circuit case of *United States v. Diaz*,[6] which describes the proper framework under which district courts are to consider "as-applied" challenges to charges brought under 18 U.S.C. § 922(g)(1). The Government contends that the nature of the Defendant's prior convictions defeats his as-applied challenge under applicable law.

Federal Rule of Criminal Procedure 12(b)(1) provides that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the permits."[7]  "Among other defenses, objections or requests available under Federal Rule of

---

[3] ECF No. 26, Exhibit 2.
[4] ECF No. 26, Exhibit 3.
[5] 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022), as clarified by *United States v. Rahimi*, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024).
[6] 116 F.4th 458 (5th Cir. 2024).
[7] Fed. R. Crim. P. 12(b)(1).

Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'"[8] A motion to dismiss an indictment can be resolved prior to trial when the motion presents a question of law.[9]

In *Bruen*, the United States Supreme Court set forth a two-step framework for Second Amendment constitutional challenges.[10] First, "*Bruen* requires the Court to decide 'if the Second Amendment's plain text covers' the conduct at issue."[11] *Second*, "the burden […] shifts to the government to demonstrate that regulating [Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'"[12] "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.'"[13] In determining if regulations are similar under the Second Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense."[14]

As to the first step of the *Bruen* analysis, the Fifth Circuit made clear in *Diaz* that the Second Amendment's plain text covers felons as among "the people" covered by the Second Amendment. Therefore, the Court will only analyze the second step of the *Bruen* requirements.

In analyzing the second prong, the Court first must determine whether there are historical analogs that "impose a comparable burden on the right of armed self-defense[,]" during the timeframe of the Second Amendment's ratification.[15] In upholding a §922(g)(1) conviction predicated on a felony theft conviction, the *Diaz* Court relied on three categories of historical

---

[8] *United States v. Wilson*, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)).
[9] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).
[10] *Bruen*, 597 U.S. at 24.
[11] *Wilson*, 2024 WL 4436637, at *4 (citing *Bruen*, 597 U.S. at 24).
[12] *Id.* (citing *Bruen*, 597 U.S. at 24).
[13] *Diaz*, 116 F.4th at 467 (citing *Bruen*, 597 U.S. at 30).
[14] *Bruen*, 597 U.S. at 29.
[15] *Id.*, 597 U.S. at 27.

analogues: (i) historical laws that authorized capital punishment and estate forfeiture as consequences of felonies, (ii) two proposals from state constitutional conventions that excluded those deemed dangerous from the right to bear arms, and (iii) the colonial-era "going armed" laws first discussed in *Rahimi* that "prohibited going armed offensively and authorized forfeiture of weapons as punishment."[16] Importantly, in all three categories of analogues discussed in *Diaz*, the consequences of committing certain crimes encompassed forfeiture of the right to bear arms.

Applying this precedent to the instant case, the historical analogs discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals viewed to be either violent or a threat to public safety.[17] These analogs demonstrate a longstanding "tradition of firearm regulation" which allows the "Government to disarm individuals who present a credible threat to the physical safety of others."[18]

Here, at least one of the Defendant's underlying predicate crimes – Aggravated Flight from an Officer – establishes the requisite nexus to public safety. This clearly places the Defendant into the category of those who "present a credible threat to the physical safety of others."[19] The very definition of the charge of Aggravated Flight from an Officer involves actions taken "under circumstances wherein human life is endangered."[20] Like in *Diaz*, the purpose behind the

---

[16] *Id.* at 467, 468, 470.
[17] The *Diaz* court explained that historical laws authorizing capital punishment and estate forfeiture as consequences of felonies were "justified by the need to adequately punish felons, deter reoffending, and *protect society from those proven untrustworthy to follow the law*." *Diaz*, 116 F.4th at 469. (Emphasis added). Additionally, the *Diaz* court found that the proposals from state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.* Finally, the *Diaz* court discussed the Supreme Court's finding in *Rahimi* that "going armed" laws punished "those who had menaced others with firearms" because such actions "disrupted the 'public order' and 'le[d] almost necessarily to actual violence.'" *Id.* at 470 (citing *Rahimi*, 144 S. Ct. at 1900-1901).
[18] *Rahimi*, 144 S.Ct. at 1902.
[19] *Id.*
[20] L.S.A.-R.S. 14:108.1(C).

enforcement of § 922(g)(1) against the Defendant is "relevantly similar to that of the [historical analogs], namely to deter violence and lawlessness."[21]

For these reasons, the Court finds that nothing in *Bruen*[22] casts doubt on the constitutionality of the application of § 922(g)(1) to Defendant, especially when considering clarifying precedents set forth in *Rahimi*[23] and *Diaz*.[24] Because the Court finds that Defendant's predicate conviction of Aggravated Flight from an Officer fits well within this nation's tradition of firearm regulation and alone precludes his lawful possession of a firearm, no further analysis is necessary in order to deny the Defendant's Motion to Dismiss. The Court finds that the Second Amendment does not preclude the enforcement of § 922(g)(1) against the Defendant in the instant case. Accordingly, the Defendant's Motion to Dismiss Count One of the Indictment [ECF No. 24] is DENIED.

IT IS SO ORDERED.

THUS DONE in Chambers on this 3rd day of February, 2025.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[21] *Diaz*, 116 F.4th at 469.
[22] 597 U.S. 1.
[23] 144 S. Ct. 1889
[24] 116 F.4th 458.